# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KAREN BAUTISTA,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, in her capacity as Commissioner of the Social Security Administration,<br><br>    Defendant. | Case No. 2:12-cv-03051-MHW<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** |

## INTRODUCTION

This case involves a challenge to the denial of disability benefits by the Social Security Administration. Currently pending before the court are cross motions for summary judgment filed by Petitioner Karen Bautista and Defendant Commissioner of Social Security.[1] (Dkts. 15 & 17). Petitioner is represented by D. James Tree. Defendant is represented by Assistant United States Attorneys Pamela Jean DeRusha and Michael Ormsby and by Franco Becia of the Office of General Counsel. The Court has reviewed the motions

---

[1]Carolyn W. Colvin became the Acting commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 1**

and supporting memoranda as well as the Administrative Record and deems these motions suitable for disposition without oral argument. For the reasons that follow, the Court will remand the case to the Commissioner for a reconsideration of Petitioner's claims.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Supplemental Security Income on January 14, 2008 and an application for Disability Insurance Benefits on January 2, 2008. (Tr. 18). Petitioner's applications were denied both initially and on reconsideration. Administrative Law Judge ("ALJ") R.J. Payne held a video hearing on June 10, 2010. (Tr. 37). ALJ Payne issued a decision finding Plaintiff not disabled on June 24, 2010. (Tr. 18-24). Petitioner filed a timely appeal to the Appeals Council, which was also denied, (Tr. 1-2), making the ALJ's decision the final decision of the Commissioner. (Tr. 1-7.) The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing before the ALJ, Petitioner was 52 years old. (Tr. 123). She has a high school education and past work experience as both a care-giver and a retail clerk. (Tr. 23). Petitioner alleged disability due to a combination of impairments, including asthma, migraines, obesity, degenerative disk disease, and bilateral carpal tunnel syndrome. (Tr. 56-57).

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving a disability in the first four steps of the sequential evaluation, after which

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 2**

the burden moves to the Commissioner at the fifth step. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, it must be determined whether the claimant is engaged in substantial gainful activity. 20 CFR 404.1520(b) and 416.920(b). Here, the ALJ found Petitioner had not engaged in substantial gainful activity since July 29, 2007. (Tr. at 20).

At step two, it must be determined whether claimant suffers from a severe impairment, or a combination of impairments that is severe according to 20 CFR 404.1520(c) or 416.920(c). The ALJ found that Petitioner suffered from two severe impairments, asthma and obesity. (*Id.*).

At step three, the ALJ must determine whether a claimant's impairments meet or equal a listed impairment, as set forth in 20 CFR Part 404, Subpart P Appendix 1. If the claimant's impairments meet or equal a listed impairment and meet the duration requirements set forth in 20 CFR 404.1509 or 416.909, the analysis is done and the claimant is conclusively shown to be disabled. In this case, at step three, the ALJ found that the Petitioner did not have an impairment or combination of impairments that met or exceeded one of the listed impairments in subpart P. (Tr. 21). If the claimant's impairments do not meet or equal the criteria for the listed impairments, the ALJ must determine a claimant's residual functional capacity (RFC) according to 20 CFR 404.1520(e) or 416.920(e). An individual's residual functional capacity is an assessment of the most a person can do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). Here, the ALJ determined that the Petitioner had the residual functional capacity for medium work, with limitations on exposure to dust, gases,

airborne pollutants, and the like. (Tr. 22).

At step four, the ALJ must determine whether the claimant has the residual functional capacity to perform the requirements of his past relevant work. 20 C.F.R. 404.1520(f) and 416.920(f). If the claimant can do her past relevant work the analysis ends and the claimant is found not to be disabled. If the claimant cannot do her past relevant work the analysis moves to step five.

The fifth and final step of the analysis requires an assessment of whether the claimant is able to do other work that exists in significant numbers in the national economy considering the claimant's residual functional capacity, age, education and work experience. Here, the ALJ determined that Petitioner was able to perform her past relevant work as a care-giver or a retail clerk or shipping/receiving clerk, so long as those positions did not require physical manipulating of the patient or other tasks requiring more than medium levels of exertion. (Tr. 23-34). The ALJ did not address step five because he had determined at step four that Petitioner was capable of performing her past relevant work.

## STANDARD OF REVIEW

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age,

education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error. *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotations omitted). It is more than a scintilla but less than a preponderance. *Id*.

Finally, it is well-settled that if there is substantial evidence to support the decision of the ALJ, the decision must be upheld "if supported by inferences reasonably drawn from the record . . ." even "where the evidence is susceptible to more than one rational interpretation." *Id*. The Court may not substitute its judgment for that of the ALJ. *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006).

## ISSUES

Petitioner argues that the ALJ erred in the following ways: 1) in rejecting her migraines, bilateral carpal tunnel syndrome, and degenerative disc disease as groundless at step two; 2) in rejecting the opinions of her treating medical providers that she was capable only of sedentary work; 3) in rejecting her subjective complaints of pain; and 4) by failing to conduct an adequate analysis at step four before determining that she was capable of performing her past relevant work. The Court agrees with Petitioner that there were errors at several stages of the process, and for the reasons discussed below, will remand the case

for further consideration.

### A. The ALJ Erred at Step Two.

First, the ALJ erred at step two by failing to account for several conditions that either were or which could be considered a severe impairment. The finding of severity at step two is a *de minimis* screening device to dispose of groundless complaints. *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996). Rulings from the Social Security Administration provide that "an impairment is found not severe . . . when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Yuckert v. Bowen,* 841 F.2d 313 (9th Cir. 1988) (quoting SSR 85–28).

Looking first at the evidence regarding Petitioner's migraines, the ALJ concluded that though she had a history of headaches and had occasionally reported a migraine, "the evidence fails to show that this is a chronic problem." (Tr. 21). The ALJ also stated that "she did not [complain of] or mention migraine headaches until May of 2009," which was over a year after Petitioner initially filed for disability benefits. (*Id.*). These conclusions, however, were incorrect. Far from being a *de minimis* problem that was only raised after the application for disability benefits had been filed, the evidence in the record establishes that Petitioner's migraines were an ongoing, chronic problem that dated back years and that continued to affect her despite treatment.

The medical records establish that Petitioner sought treatment for migraines as far back as 2004. Specifically, in March of 2004, during an annual exam, providers noted that

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 6**

she had a history of migraines, gave her an injection of Toradol and recommended that she continue with Imitrex at home.[2] (Tr. 252). Records from November of 2004 indicate that Plaintiff was still suffering from headaches and that she had run out of Imitrex. (Tr. 245). In March of 2006, still well before she applied for disability benefits, Petitioner reported experiencing migraine headaches every other day and discussed taking prophylactic medication with her provider. (Tr. 274). In May of 2009 she again sought treatment for headaches and was assessed with migraines of moderate severity. Petitioner reported at this time that the headaches were occurring weekly and also reported blurred vision, nausea, performance changes, photophobia, and phonophobia. (Tr. 331). She testified at the hearing before the ALJ that she still got two or three migraines a week. She also testified that, despite taking medication, she still experiences two or three uncontrollable headaches a month. When this occurs she must lie down in a dark room for an entire day. (Tr. at 56-57).

The Court concludes that Petitioner's migraines should have been considered a severe impairment at step two. The Court is aware that Petitioner's history of migraines covers periods of time when she was still gainfully employed, and therefore does not necessarily suggest a *disabling* level of impairment. However, this consideration does not constitute a reason for finding her migraine condition a groundless complaint at step two. The failure to recognize it as a severe impairment was error.

The next issue at step two relates to Petitioner's back pain and/or degenerative disk disease. At the time of the hearing before the ALJ, the primary evidence in the record

---

[2]Both Toradol and Imitrex are medications commonly used to treat migraine.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 7**

regarding Petitioner's back pain was Dr. Fady Sabry's November 2008 assessment on a pre-printed form from the Washington Department of Social and Health Services, in which he indicated that this condition was mild and would not be expected to create significant interference with the ability to perform basic work-related activities. (Tr. 366).

If this were the only evidence in the record, the Court might be inclined to uphold the ALJ's determination that Petitioner's lower back pain was not severe at step two. However, Petitioner continued to seek treatment for this condition after the ALJ issued his decision, at one point visiting the emergency room for back pain and sciatica. (Tr. 406, 461, 465, 473, 477, 481-488). An MRI taken on December 9, 2010 (two years after Dr. Sabry's assessment) also revealed mild to moderate degenerative disk disease with discogenic bone marrow edema and mild diffuse disc bulge at L5-S1. (Tr. 493).[3] Looking at the evidence in the record as a whole, the presence of an MRI identifying "mild to moderate" degenerative disk disease convinces the Court that this impairment should also be considered severe at step two.

Whether the bilateral carpal tunnel syndrome was severe is a closer question, but here again, the Court will remand for reconsideration of this issue. There is no doubt that if this condition had been left untreated, it would have to be considered a severe impairment at step two. Dr. Sabry noted as much in an assessment dated November 29, 2008, in which he rated the severity of Plaintiff's carpal tunnel condition as "moderate," which meant that it would

---

[3] According to long-established Ninth Circuit precedent, a claimant may submit new evidence to the Appeals Council even after an ALJ issues a negative decision. If accepted by the Appeals Council, the new evidence becomes part of the record which the District Court must then review. *See, e.g. Taylor v. Comm'r. of Social Security,* 659 F.3d 1228 (9th Cir. 2011); *Ramirez v. Shalala*, 8 F.3d 1449 (9th Cir. 1993). In this case, the post hearing evidence regarding back pain was accepted by the Appeals Council. (Tr. 5).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 8**

present "significant interference with her ability to perform one or more basic work related activities." (Tr. 366). However, Petitioner underwent a bilateral carpal tunnel release surgery in March of 2009, several months after the date of Dr. Sabry's assessment. (Tr. 394). At the hearing before the ALJ, she testified that the surgery had resolved symptoms of numbness and shooting pain in her hands, but that problems with her grip remained and that she still could not lift heavy items. (Tr. 375, 376, 387). However, the medical records do not contain anything in the way of an objective indication of how Petitioner fared after this procedure.

Because Petitioner bears the burden of proof at step two, the Court might be inclined to agree with the decision of the ALJ that her carpal tunnel syndrome would not be considered a severe impairment post-surgery. However, there were other errors in the ALJ's decision that necessitate a remand, including other errors at step two, and therefore, the Court deems it wise to allow Plaintiff to submit evidence regarding the ongoing effect of her carpal tunnel syndrome on remand. However, unlike the case of the lower back pain and the migraines, the ALJ is free to determine whether the Plaintiff's condition post-surgery warrants a finding of severity.

### B. The ALJ's Credibility Determination was Flawed.

Next, the Court finds that the ALJ erred in his assessment of Petitioner's credibility. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). To reject a claimant's testimony regarding impairments, "the ALJ [is] required to make 'a

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 9**

credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Tommasetti*, 533 F.3d at 1039 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)). The ALJ must identify what testimony is not credible and what evidence undermines a claimant's complaints. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Further, "[t]he ALJ must support his credibility finding 'with specific, clear and convincing reasons.'" *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quoting *Taylor v. Comm'r. of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011)). "[A]bsent affirmative evidence of malingering, an ALJ cannot reject a claimant's testimony without giving clear and convincing reasons." *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001). *See also, Smolen v. Chater,* 80 F.3d 1273, 1283-84 (9th Cir. 1996).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct; claimant's daily activities; claimant's work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d at 958-59. Courts have also held that an ALJ may take the claimant's daily activities into account. *Light v. Social Sec. Admin,* 119 F.3d 789, 792 (9th Cir. 1997); *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989). In addition to these factors, the ALJ may consider prior inconsistent statements regarding the symptoms as well as "other testimony by the claimant that appears less than candid." *Chaudhry v. Astrue,* 88 F.3d at 672

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 10**

(citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Id*.

In this case, the ALJ first noted that once an underlying impairment has been shown that could reasonably be expected to produce the claimant's pain, the ALJ must then evaluate the "intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning." (Tr. 22). The ALJ then went on to explain that "whenever statements about the intensity, persistence and limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record." (*Id.*). These were correct statements of the standards to be applied. *See Bel-Shier v. Astrue,* 312 Fed.Appx. 45 (9th Cir. 2009) (citing Social Security Ruling No. 96-7p). However, the ALJ erred in its application of these standards.

Reading the ALJ's decision in its entirety and the findings on credibility in particular, the Court finds that the ALJ did not give the Petitioner's claims the careful and considered analysis that they deserved. To start with, at step two, the ALJ had already disregarded the fact that Petitioner had been diagnosed with migraines and refused to consider them as a severe impairment. He also erroneously stated that her headaches did not begin until 2009, which was after she had filed for disability. In fact, they had begun several years prior to that. The ALJ's stated that "although migraines and urinary incontinence [have] been listed as medical conditions, she has never reported any headache activity." (Tr. at 23). This

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 11**

conclusion was based on a clear misreading of Petitioner's medical records, and may well have colored the ALJ's perception of the Petitioner and the overall strength of her case.

Other errors may also have affected the ALJ's credibility determination. First, the ALJ did not sufficiently explain the reasons underlying his decision to discredit Petitioner's testimony. It is black letter law that ALJs are required to make adverse credibility determinations with "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Tommasetti v. Astrue,* 533 F.3d at 1039. "Absent affirmative evidence of malingering, an ALJ cannot reject a claimant's testimony without giving clear and convincing reasons." *Vertigan v. Halter,* 260 F.3d 1044, 1049 (9th Cir. 2001). The ALJ must also identify what testimony is not credible and explain how it undermines the claimant's complaints. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

The ALJ's opinion in this case fails to meet these standards. The factual discussion regarding Petitioner's credibility appears on pages 22 and 23 of the decision. The ALJ notes several conditions, such as diabetes and a prior shoulder surgery, that Petitioner was not even claiming were part of her constellation of disabling conditions. (Tr. 22). For example, the ALJ states, "for her part, the claimant confirmed that she while she was tested for diabetes, she did not have diabetes." It also notes that "after her shoulder surgery was brought up, [Petitioner] reported pain 'every once in a while.'" (Id.). The ALJ also states that Petitioner "had been told she was a good cook," that she "enjoyed reading," and "watched about three hours of television a day." While inconsistency between a claimant's daily activities and her

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 12**

purported complaints of pain may be used to sustain an adverse credibility finding, the mere fact that a claimant can perform certain daily activities does not render incredible her overall claims of disability. *Schow v. Astrue,* 272 Fed. Appx. 647, 652 (9th Cir. 2008).

In short, the discussion of Petitioner's credibility reads as an unfocused recitation of mostly random facts. It certainly fails to identify specific portions of Petitioner's testimony that the ALJ found not credible and to give specific, cogent reasons for those conclusions. To be fair, the ALJ did rely on the inconsistencies between Petitioner's self-reported limitations and Dr. Arvin Klein's opinion that she was capable of performing medium work, but this conclusion was dependent on a legally insufficient rejection of her treating physician's opinion. When one adds these errors to the fact that the ALJ had already erroneously discounted at least two ailments as trivial at step two, it is apparent to the Court that the adverse credibility determination cannot be sustained. Simply put, there is little in the ALJ's decision to convince the Court that his conclusion that the Plaintiff's subjective complaints were not credible was a reasoned, rather than an arbitrary determination.

### C.     Assessment of Dr. Sabry's Opinions

The ALJ also erred in it discounting Dr. Sabry's opinion. Dr. Sabry was one of Petitioner's treating physicians and saw her on multiple occasions for asthma, back pain, and other conditions. (Tr. 405, 435, 459-62, 479-82). On November 24, 2008, he completed a physical evaluation form for the Washington State Department of Social and Health Services. (Tr. 364-369). In this report, Dr. Sabry indicated that Petitioner suffered from asthma, carpal

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 13**

tunnel syndrome, and lower back pain. He indicated that the asthma and carpal tunnel syndrome were of "moderate" severity and would cause significant interference with the ability to perform various work-related activities, including sitting, standing, walking, lifting, handling, and carrying. (Tr. 366). Because of these limitations, Dr. Sabry stated that the Petitioner would be limited to sedentary work. *(Id.)*. The ALJ, however, concluded that Petitioner had the residual functional capacity to perform medium work. In so doing, the ALJ relied on the opinion of Dr. Arvin Klein, a physician who had reviewed Petitioner's medical records but not treated her. (Tr. 23).

The ALJ's stated reason for rejecting the opinion of Dr. Sabry was that preprinted disability assessments for the Department of Social and Health Services "are generally lenient and [made for] for the purpose of assisting claimants in maintaining/continuing general assistance benefits." (Tr. 23). Petitioner takes issue with this statement, arguing that it was an insufficient reason for rejecting Dr. Sabry's opinion.

The Ninth Circuit has held that:

> [a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. We have also held that clear and convincing reasons are required to reject the treating doctor's ultimate conclusions. Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record for so doing.

*Lester v. Chater*, 81 F.3d 821 (9th Cir. 2001) (internal citations and quotations omitted).

The Court agrees that the ALJ's stated reasons for discounting Dr. Sabry's opinion

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 14**

are insufficient. The Ninth Circuit has previously cautioned against relying on an unsupported suspicion of "leniency" as a basis for rejecting a treating physician's opinion that would otherwise be entitled to greater weight. *See, Rodriguez v. Bowen,* 876 F.2d 759, 762 (9th Cir. 1989). In that case, the Ninth Circuit observed that the suggestion that a physician might be "leaning over backwards" to help a patient is a "serious allegation" which, if true, would support the rejection of that doctor's opinion. *Id.,* 876 F.2d at 762 n. 6. However, such assertions cannot be made purely upon speculation with no evidentiary support. *Id*. At least one other circuit court has cautioned against rejecting the opinions of treating doctors based purely on a suspicion of leniency. *See Miles v. Chater,* 84 F.3d 1397, 1399 (11th Cir. 1996) (reversing and remanding ALJ's decision where the ALJ had concluded, without evidentiary support, that a particular treating physician "invariably" found claimants disabled).

In this case, the ALJ's conclusion that "disability assessments are generally lenient" and his rejection of the opinion on that basis was similarly erroneous. Because this was the only reason cited by the ALJ for rejecting Dr. Sabry's opinion, the Court will not credit the post-hoc justifications for rejecting Dr. Sabry's opinions that the Defendant has suggested in this Court. *See, e.g. Pinto v. Massanari,* 249 F.3d 840, 847-48 (9th Cir. 2001) (refusing to affirm a denial of benefits on a ground not originally invoked by the Commissioner).

### F. Step Four

Finally, the Court concludes that the ALJ also failed to make adequate findings at step four that Petitioner was capable of performing her past relevant work as a care-giver and a

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 15**

retail clerk. "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion. This is done by looking at the residual functional capacity and the physical and mental demands of the claimant's past relevant work. . . . This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." *Pinto v. Massanari,* 249 F.3d 840, 845 (9th Cir. 2001) (citing SSR 82-61 and 82-62). Further, "[t]hese findings must be based on evidence in the record and must be developed and fully explained by the ALJ. Step four requires specific findings on all three points sufficient to insure that the claimant really can perform his past relevant work." *Albers v. Astrue,* 2011 WL 2713414 at * 14 (E.D.Wash. 2011).

Here, the analysis at step four was flawed for a variety of reasons. To begin with, because of the errors that occurred at step two, the step four analysis failed to account for a number of Petitioner's limitations, such as her migraines, that would potentially affect her ability to either hold down a job or perform the required tasks of her past relevant work. The primary problem with the ALJ's conclusions as to past relevant work, however, was that they were not based on evidence. The core of the ALJ's reasoning was that "there are numerous (a significant number) care-giver positions that do not require the physical manipulations of the patient/beneficiary; and there are also numerous (a significant number) merchandising and shipping/receiving clerk positions which do not require lifting 100 pounds." (Tr. 23-24). The ALJ also found that there were numerous shipping/receiving clerk positions that did not

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 16**

involve exposure to airborne pollutants. (Tr. 23). Though these statements may well be true, they are nevertheless completely untethered to any evidence in the record. For example, there was no testimony from a vocational expert explaining what kinds of work a person with Petitioner's limitations could be expected to perform. Nor did the ALJ reference the Department of Occupational Titles or any other source of information about the particular demands of her past relevant work. Though these are not the only kinds of evidence upon which ALJs may rely in making step four determinations, *Perez v. Astrue,* 247 Fed.Appx. 931, 933 (9th Cir. 2007), determinations at step four must be based on something beyond an ALJ's guess as to how certain kinds of jobs are performed.[4]  For these reasons, the Court finds that errors at step four also necessitate a remand.

### E.     The Errors Were Not Harmless

Finally, none of these errors were harmless. In order to obtain a reversal or a remand, a party who identifies error in administrative proceedings must also demonstrate that the error effected his substantial rights, not merely his procedural rights. *Ludwig v. Astrue,* 681 F.3d 1047, 1054 (9th Cir. 2012). Though the Commissioner argues that the errors, if any, were harmless, the Court cannot agree. The ALJ's erroneous credibility determination cannot be said to be harmless where Petitioner was relying at least in part on her subjective complaints of pain to prove her disability status. The ALJ's rejection of Dr. Sabry's opinion

---

[4]The ALJ also noted that the state agency medical consultants also determined that Petitioner would be able to perform her past relevant work as a care-giver. (Tr. 24). However, the referenced documents considered only one impairment, asthma, and not the numerous other impairments that either are or may be severe at step two. (Tr. 294-316).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 17**

based purely on the suspicion of "leniency" was also a legal error that cannot be considered harmless because if his opinion had been credited it would have been entitled to more weight than Dr. Klein's. Likewise, the ALJ's conclusion at step two that Petitioner's migraines were groundless was the sort of decision that may well have colored the ALJ's overall perceptions of Petitioner and the merits of her claims. These were not minor procedural errors, but rather, decisions that went to the heart of the case.

### F.     Remand

Though Petitioner has requested that this Court reverse for an immediate award of benefits, the Court concludes that the more appropriate remedy is to remand the case under sentence four of 42 U.S.C. § 405(g). It may also be appropriate for the Commissioner to assign the case to a new ALJ. Petitioner bases much of her case for an immediate reversal on Dr. Sabry's opinion, which states that she is only capable of sedentary work.[5] This was based in part on his assessment of her carpal tunnel syndrome as posing a significant limitation on her ability to work. However, this assessment pre-dated the Plaintiff's carpal tunnel release surgery. Since Petitioner herself reported some improvement after her this surgery, the Court is not inclined to take that aspect of Dr. Sabry's opinion at face value. Dr. Sabry also indicated that Petitioner's lower back pain did *not* constitute a significant impairment on her ability to work, yet there is evidence in the record, particularly the post-decision MRI, that suggests that her back troubles may have worsened. Because Petitioner's

---

[5]Though not stated in the briefing, the Court assumes that due to Petitioner's age and work history, she would "grid out" if she were indeed only capable of sedentary work.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 18**

situation during the relevant time periods may have been somewhat fluid, and because ALJs are better placed than courts to determine whether a particular constellation of symptoms warrants an award of benefits, a remand rather than reversal is the appropriate course of action.

## ORDER

1. Petitioner's Motion for Summary Judgment (Dkt. 16) is **GRANTED.**

2. Defendant's motion for summary judgment (Dkt. 18) is **DENIED.**

3. Pursuant to sentence four of 42 U.S.C. § 405(g), the case shall be remanded to the Commissioner of Social Security for a new hearing. Upon remand, the Commissioner may also determine whether the case should be assigned to a new Administrative Law Judge.

4. Upon reassignment, the Administrative Law judge is instructed to consider Petitioner's migraines and lower back pain as severe impairments at step two. Consistent with the discussion herein, any other issues, including whether Petitioner's carpal tunnel syndrome is a severe impairment, and whether any of her conditions are disabling either singly or in combination, will be left to the ALJ to determine.

5. The District Court Executive is directed to file this Order and provide a copy to counsel for Petitioner and Defendant. Judgment shall be entered in favor of Petitioner Karen Bautista.



DATED: December 30, 2013

Honorable Mikel H. Williams
United States Magistrate Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 20**